IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  CV-11-648-D |
| | ) |
| LOUIS MAYNAHONAH, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

Before the Court is the Amended Motion to Intervene [Doc. No. 46], filed by TGS Anadarko, LLC ("TGS") pursuant to Fed. R. Civ. P. 24.  The Amended Motion is accompanied by a proposed complaint, as required by Rule 24(c).  It was filed the same day that the Court denied TGS's initial motion due to noncompliance with Rule 24(c).  *See* Order 7/20/11 [Doc. No. 45].  Defendants have timely opposed the motion; Plaintiff Wells Fargo Bank, N.A. has responded in support of it.  The time for filing a reply brief has expired.  Thus, the motion is at issue.

**Factual and Procedural History**

This declaratory judgment action under 28 U.S.C. §§ 2201-02 and 28 U.S.C. § 1331, seeks a determination of the federal question of whether the Apache Business Committee and the Apache Gaming Commission have jurisdiction over Plaintiff Wells Fargo Bank with respect to a loan agreement between Plaintiff and the Apache Tribe of Oklahoma (the "Tribe"), and assignments of a lease agreement between the Tribe and KAGD, LLC.  The lease agreement was an equipment lease for gaming machines, first assigned by KAGD, LLC to TGS, which held a gaming license from the Tribe, and then assigned by TGS to Plaintiff, as additional security for a loan to TGS to purchase the machines.  Under the Amended Complaint, Plaintiff is suing seven tribal officials:  Chairman

Louis Maynahonah; two other members of the Business Committee; three appointed members of the Gaming Commission; and its appointed hearing officer. The Amended Complaint recites a detailed history of the dispute between Plaintiff and the Tribe concerning their loan agreement, an arbitration proceeding regarding their loan dispute, and subsequent actions regarding an arbitral award in Plaintiff's favor. Plaintiff contends the Business Committee exceeded its jurisdiction by issuing an order purporting to vacate the award.

The Amended Complaint also recites facts regarding a dispute between the Tribe on one side, and Plaintiff and TGS on the other, concerning the equipment lease. Specifically, the Gaming Commission allegedly notified Plaintiff and TGS of assertions that TGS's assignment of the lease to Plaintiff conferred an ownership interest, not merely a security interest, and that Plaintiff was an unlicensed vendor in violation of the Tribe's gaming ordinance. During the pendency of this case, the Tribe initiated a proceeding against Plaintiff and TGS before the Gaming Commission to determine these and other issues; the Tribe's petition requests the imposition of civil penalties, including lease cancellation, forfeiture of the equipment, and disgorgement of rental payments. The Amended Complaint alleges that the lease dispute is also subject to an arbitration agreement that reserves all issues for decision by arbitrators, including the arbitrability of the issues involved in the tribal regulatory proceeding. The Amended Complaint also alleges that Plaintiff and TGS have initiated an arbitration proceeding as required by the contract and that the Gaming Commission's proceeding, like the Tribe's petition purporting to request regulatory action, is contrary to the Tribe's contractual obligation to submit to binding arbitration.

Plaintiff asserts four causes of action in its Amended Complaint. The first claim seeks a declaratory judgment that the Business Committee lacks jurisdiction over Plaintiff for any tribal

proceeding to review, modify or vacate the arbitrator's award regarding the loan dispute and, thus, the Business Committee's order purporting to vacate the award is null and void. The first claim also seeks a declaratory judgment that the Gaming Commission lacks jurisdiction over Plaintiff with respect to the pending tribal proceeding or any other action affecting the lease dispute, which is subject to binding arbitration; Plaintiff asserts that any question regarding the arbitrability of issues raised in the tribal proceeding must be decided by arbitrators. The second and third claims seek, respectively, a preliminary injunction and a permanent injunction to prohibit the Gaming Commission, acting through its members and hearing officer, from proceeding with the regulatory matter. The fourth claim seeks a permanent injunction to prohibit the Business Committee, acting through Chairman Mayahonah and other defendant members, from enforcing the order purporting to vacate the arbitrator's award or taking any further action to vacate or modify the award.

After the Amended Complaint was filed, the Court entered, upon Plaintiff's motion, a temporary restraining order that prohibited the Gaming Commission's hearing officer from proceeding with a scheduled hearing and prevented the Gaming Commission from acting on the petition. Also, after an evidentiary hearing, the Court entered a preliminary injunction that similarly prevents members and officers of the Gaming Commission from taking action with respect to issues raised by the petition, except as expressly mandated by the Tribe's gaming ordinance. Specifically, during the pendency of this case, the Court has enjoined members and officers of the Gaming Commission from adjudicating issues involving Plaintiff or affecting its rights and potential remedies under the equipment lease or loan agreement.

The Court also denied Defendants' motion to dismiss Plaintiff's action on jurisdictional and other grounds. In so doing, the Court determined that dismissal to require exhaustion of tribal

remedies was inappropriate because "abstention would serve no useful purpose." *See* Order 9/2/11 [Doc. No. 74] at 8. The Court reasoned, in part, as follows: "[T]he issues framed by the Amended Complaint and Defendants' contentions present federal questions that lie beyond the jurisdiction of the Gaming Commission, or any other tribal entity, to decide. The enforceability of the Tribe's contractual commitments to arbitrate disputes and to waive tribal exhaustion are not matters within the Gaming Commission's regulatory authority, but involve issues of federal law within the jurisdiction of federal courts." The Court also determined that the exception to sovereign immunity established by *Ex parte Young*, 209 U.S. 123 (1908), and extended to tribal immunity in *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011), may properly be applied in this case to enjoin a violation of federal common law by tribal officials. Finally, the Court determined that the Amended Complaint states an actionable claim against officers of the Gaming Commission, despite its tribal regulatory authority under IGRA, the tribal-state gaming compact, and tribal gaming law. The Court found that the Amended Complaint properly seeks to prevent officers of the Gaming Commission from exercising authority over Plaintiff that the Gaming Commission allegedly lacks because it "is attempting under the guise of a regulatory proceeding to decide contractual issues in derogation of the Tribe's contractual obligation to arbitrate any dispute related to the lease agreement, including the issue of whether the dispute is an arbitrable matter." *See* Order 9/2/11 [Doc. No. 74] at 10.

TGS seeks to intervene in Plaintiff's action in order to represent its own interests. TGS has submitted a proposed complaint that is almost identical to Plaintiff's Amended Complaint, except for adding two paragraphs regarding its interest in the loan dispute between Plaintiff and the Tribe,

and the likely hardship it may suffer if not joined as a plaintiff.[1] TGS's proposed pleading asserts the same claims for declaratory and injunctive relief stated in the Amended Complaint. TGS contends it has property, contractual, and economic interests at stake in this action that may, as a practical matter, be impaired or impeded if it is not allowed to intervene. TGS also argues that its interests may not be adequately represented by Plaintiff. These allegations are contested by Defendants.

**Standard of Decision**

Rule 24 authorizes two types of intervention: (a) as a matter of right; and (b) with court permission. TGS asserts a right to intervene under Rule 24(a)(2), which mandates intervention for a timely movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Thus, "the requirements for intervention as of right [are]: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties." *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1391 (10th Cir. 2009) (internal quotations omitted). These requirements are not rigid and technical or mechanically applied, but involve an exercise of judgment "based on the specific circumstances of the case." *See San Juan County v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc). The court of appeals has described a practical standard governing the nature of an

---

[1] TGS's proposed pleading also omits details of the loan dispute between Plaintiff and the Tribe, including any reference to a June 1, 2011, order executed by Chairman Maynahonah on behalf of the Business Committee, regarding which, curiously, TGS seeks declaratory relief in its "First Cause of Action." *See* Am. Mot. Intervene, Ex. 1 [Doc. No. 46-1], ¶ 41.

interest sufficient to warrant intervention: "The applicant must have an interest that could be adversely affected by the litigation. But practical judgment must be applied in determining whether the strength of the interest and the potential risk of injury to that interest justify intervention." *Id.; see also Albert Inv. Co.*, 585 F.3d at 1392. Regarding the adequacy of representation, Rule 24(a) places the burden on the movant to demonstrate that its interests are not adequately protected by the existing parties. *See Albert Inv. Co*., 585 F.3d at 1392.

Alternatively, TGS requests permissive intervention under Rule 24(b)(1)(B), which applies where an intervenor "has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention under this rule is within the discretion of the district court. Accordingly, the Court may deny intervention even if the requirements of Rule 24(b) are satisfied. *See City of Stilwell v. Ozarks Rural Elec. Coop. Corp*., 79 F.3d 1038, 1043 (10th Cir. 1996).

## Discussion

### A.     Right to Intervention

TGS's arguments regarding its interest in Plaintiff's action and its potential prejudice if intervention is denied are directed solely at the equipment lease. TGS contends it is the lessor under the lease, owns the gaming equipment involved, and owes a substantial sum under a credit agreement with Plaintiff that funded the transaction. However, the federal subject matter jurisdiction of Plaintiff's action is grounded in questions regarding the jurisdiction of the Business Committee to take action with regard to Plaintiff's arbitral award and the jurisdiction of the Gaming Commission to exercise regulatory authority over Plaintiff in a manner designed to affect the parties' rights and remedies under the lease agreement. TGS's interest in the first issue is not apparent or otherwise explained in the motion papers. While TGS shares Plaintiff's interest in the second issue,

it appears their interests are fully aligned.  TGS does not explain why its involvement is necessary to resolve the question of the Gaming Commission's jurisdiction to adjudicate issues affecting the lease dispute, or how TGS's absence from the case will impair its interest in seeing that a contractual obligation of the Tribe to arbitrate the dispute is enforced.  Similarly, TGS does not explain why Plaintiff will not adequately represent its interest in enforcement of the alleged arbitration agreement.[2]

In short, the Court finds that TGS has not demonstrated that the strength of its interest in the federal issues presented or the potential risk of injury to that interest justify intervention, or that its interest is not adequately protected by Plaintiff.

**B.   Permissive Intervention**

For similar reasons, the Court is not persuaded that TGS should be permitted to intervene in this action.  In addition to the adequacy of Plaintiff's advocacy, TGS's position differs from Plaintiff's with regard to important issues, such a tribal exhaustion.  As a licensed vendor, TGS was clearly subject to the Tribe's regulatory authority and must answer to the Gaming Commission with regard to tribal gaming laws.  Thus, for example, the preliminary injunction entered by the Court does not prevent the Gaming Commission from taking necessary action to enforce its gaming ordnance.  Accordingly, TGS's involvement might complicate the case in a manner and to a degree that would outweigh any benefit that might otherwise be gained from permitting TGS to argue the common issues.

## Conclusion

---

[2] Further, the Court notes that TGS may advocate its own interests with regard to the lease dispute in a subsequently filed action now pending in this Court, to which TGS is a party.  *See Apache Tribe v. TGS Anadarko, LLC*, Case No. CIV-11-1078-D (W.D. Okla. Sept. 27, 2011).

For these reasons, the Court finds that TGS has failed to justify its request for intervention.

IT IS THEREFORE ORDERED that TGS's Amended Motion to Intervene [Doc. No. 46] is DENIED.

IT IS SO ORDERED this 28th day of December, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE